## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| HOLLY WILLIAMS and KIMBERLY TALLMAN, ) ) ) | |
| Plaintiffs, ) ) | Case No.: 19-cv-3162 |
| v. ) ) | |
| MEMORIAL MEDICAL CENTER, ) ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiffs Holly Williams and Kimberly Tallman, by their attorneys, Jennifer Sender and Andrés J. Gallegos of Robbins Salomon & Patt, Ltd., for their Complaint against Defendant Memorial Medical Center ("Memorial," or the "Defendant"), an Illinois not-for-profit corporation, state as follows:

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the Plaintiffs' claims alleged herein arise under Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*, and Section 1557 of the Patient Protection and Affordable Care Act ("Section 1557"), 42 U.S.C. § 18116.

2. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b). All of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

## THE PARTIES

3.  Plaintiff Holly Williams ("Holly"), is an adult and is profoundly deaf. Holly's primary means of communication is through American Sign Language ("ASL"), and she has a limited ability to read the English language, and cannot lip read. She is a person with a disability within the meaning of all applicable statutes. Holly resides in Jacksonville, Illinois.

4.  Plaintiff Kimberly Tallman ("Kimberly") is Holly's mother. Kimberly is hearing. She has extremely limited knowledge of sign language. Kimberly has no knowledge of signs for medical terms. Kimberly resides in Belleville, Illinois.

5.  Memorial Medical Center is an Illinois not-for-profit corporation and is a regional acute care medical center located in Springfield, Illinois, which serves the residents of 40 central and southern Illinois area.

## FACTUAL BACKGROUND

6.  The deaf community struggles with significant health disparities and is often excluded from health surveillances, outreach programs and mass media healthcare messages. Deaf users of ASL, through cultural and language barriers, are at high risk for poor health knowledge and inequitable access to medical care in our health system. These barriers directly translate to inadequate assessment, limited access to treatment, insufficient follow-up and poorer outcomes. For example, as compared with the hearing population, for the deaf population there are lower rates of individuals accessing preventative services, worse cardiovascular health outcomes and

higher rates of diabetes and obesity.[1] ASL is the primary language for many people who are deaf; however, interpreters are often not provided during medical visits, even when such medical visits are not for themselves, but for their minor children.

7. Memorial's denial to Plaintiffs of full and equal access to its healthcare services manifests itself in several fundamental ways: (1) failure to provide appropriate auxiliary aids and services, like qualified ASL interpreters and devices, or other means to effectively communicate with patients who are deaf; (2) required family members to interpret for patients who are deaf; (3) inadequate policies and procedures to accommodate the Plaintiff's disability; and (4) failure to properly train appropriate staff on the use of video remote interpreting ("VRI") equipment. These violations deprived the Plaintiffs of the full and equal access to defendant's services and denied Plaintiffs the equal opportunity to participate in Holly's healthcare, in violation of the Rehabilitation Act and Section 1557.

8. Memorial failed to implement policies, practices and procedures that meet its enhanced federal communication access mandate, which if followed would provide Plaintiffs an equal opportunity to participate in its services and in healthcare services provided to Holly, as required by Section 1557. 45 C.F.R. § 92.202.

9. Memorial is a public accommodation within the meaning of the ADA, and a covered entity within the meaning of Section 1557.

10. Memorial participates in one or more Medicare and Medicaid healthcare plans with third-party payers and is a participating provider under Medicare and Medicaid. Approximately 70% of Memorial's inpatients are Medicaid and Medicare recipients; and approximately 50% of

---

[1] *See* Schoenborn, M.P.H., et al., Health Disparities Among Adults with Hearing Loss: United States, 2000 – 2006, Center for Disease Control and Prevention, Health E-Stats. Available at:
http://www.cdc.gov/nchs/data/hestat/hearing00-06/hearing00-06.htm

its outpatients are Medicaid and Medicare recipients. As a result thereof, Memorial is a recipient of federal financial assistance within the meaning of the Rehabilitation Act and a covered entity under Section 1557.[2]

11. Memorial failed to provide Holly with auxiliary aids and services to allow her to effectively communicate with Memorial's medical and nursing staff during numerous vital encounters in connection with her emergency room visit to and subsequent surgery at Memorial in June 2018, which did not allow her to participate in her care. Further, Memorial improperly relied on Kimberly to facilitate communication between physicians and nurses and Holly during numerous vital encounters in connection with medical services that Holly received at Memorial. By failing to provide auxiliary aids and services, Memorial jeopardized Holly's health and well-being.

12. On the afternoon of June 28, 2018, Holly was rushed to Memorial's emergency department with nausea, vomiting and severe abdominal pains, which were later diagnosed as gastric ulcers. Upon arrival, Holly was doubled over in pain. She requested an on-site ASL interpreter. Staff advised Holly that an on-site interpreter would arrive shortly and in the interim VRI equipment would be provided. The VRI was not effective because it kept disconnecting. Further, even during the short intervals when there was a connection, Holly, who was prone on a gurney and in considerable pain, had difficulty seeing the on-screen interpreter.

13. Without the benefit of an on-site interpreter or VRI, Holly underwent a battery of examinations, which demonstrated that she had severe abdominal bleeding requiring surgery.

---

[2] Illinois Hospital Report Card and Consumer Guide to Healthcare, Illinois Department of Public Health. Available at: http://www.healthcarereportcard.illinois.gov/hospitals/view/101160 (52.5% of all inpatients at Memorial Medical Center are Medicare recipients, and 17.7% of its inpatients are Medicaid recipients; 28.91% of all of its outpatients are Medicare recipients, and 21.08% of its outpatients are Medicaid recipients).

Memorial's staff contacted Plaintiff Kimberly, Holly's emergency point of contact, to inform her of Holly's need for surgery. During that call, Kimberly stated she would proceed to the hospital and asked if Memorial was going to provide Holly with an interpreter and was told they were working on it. Holly was forced to attempt to communicate by lip reading and exchanging written notes. Because Holly was in severe pain, she had difficulty reading what the nurses and doctors wrote and difficulty with lip reading. She did not understand why surgery was needed or what it would entail.

14. On June 28, 2018, at approximately 8:30 p.m., Holly's friend, who is also deaf, arrived at Memorial. Holly was being prepared for surgery. Holly's friend, who has some ability to verbalize speech, requested an ASL interpreter for Holly.

15. On June 28, 2018, at approximately 9:30 p.m., as Holly's surgery was finishing, Kimberly arrived at Memorial after a 3-hour drive from her Belleville home, and was informed by Holly's deaf friend that there was no on-site interpreter or VRI equipment for Holly. Kimberly asked the staff regarding the status of an ASL interpreter and again was told that they were working on it. Kimberly then asked if she could be with Holly in the recovery room to try to help her communicate. Kimberly felt compelled to interpret for Holly as Holly had no other manner by which to communicate with Memorial's doctors and nurses. Kimberly stayed overnight with Holly as she was fearful for her daughter being left alone without having any means to communicate.

16. On the morning of June 29, 2018, still without an interpreter, Holly texted another friend, who is a licensed interpreter, and asked for help. As they were waiting for Holly's friend to arrive, Kimberly and Holly spoke at length with Memorial's patient experience liaison, Phil Wood, and told him of their horrendous experience of Holly not having an interpreter, whether on-

5

site or through VRI, the stress and anxiety that caused Holly, and the additional stress and anxiety that caused Kimberly as she was making her way to the hospital knowing that her daughter had no means by which to communicate. Mr. Wood informed them that the hospital had multiple VRI equipment. Holly's interpreter friend arrived prior to Holly's discharge, but she could only stay for approximately 1.5 hours, and was able to interpret for Holly her diagnosis, discharge plan and follow-up instructions. After the friend left, Hospital staff then provided VRI equipment, which was utilized until Holly's discharge at 1:00 p.m.

17. Kimberly experienced significant stress because she had to bear the burden to try to interpret for Holly, knowing she could only interpret an extremely small amount of the dialog with Holly's doctors and nurses.

18. Outside of Holly's patient room, on a whiteboard someone wrote, inaccurately, that Holly is hard of hearing. During Holly's almost 24-hour hospitalization, including a battery of testing, a detailed discussion of potential procedures including exploratory laparoscopy, possible open endoscopy, as well as esophagogastroduodenoscopy; discussions of potential risks and benefits, with the risks including, but not limited to, bleeding, infection, damage to surrounding structures, possible conversion to open endoscopy, possible failure to resolve symptoms, possible perforation, as well as the inherent risk of anesthesia; consent to surgery, surgery, and discharge instructions, Holly had a licensed ASL interpreter—one whom she provided—for only 1.5 hours. Despite purportedly having multiple VRI equipment, VRI was provided—but not operational—in the emergency room and was not provided again to Holly until she was ready to be discharged.

19. Holly had previous surgeries at Memorial in 2016, during which she experienced similar communication access problems.

6

## COUNT I

### Holly Williams - Violation of the Rehabilitation Act of 1973, 29 U.S.C. § 704

1-19.   Plaintiff incorporates by reference the paragraphs 1-19.

20.   At all relevant times herein, Defendant received federal financial assistance in the form of reimbursement from the federal Medicare and Medicaid programs and is therefore subject to the anti-discrimination provisions of the Rehabilitation Act, as herein described.

21.   At all times relevant herein, there was in full force and effect a statute known as the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et sequitur*, and its implementing regulations, 45 C.F.R. § 84.4(a). The Section 504 implementing regulation provides that "[n]o qualified handicapped person shall, on the basis of handicap be excluded from participation in, be denied the benefits of or otherwise be subjected to discrimination under any program or activity which receives or benefits from Federal financial assistance." 45 C.F.R. § 84.4(a).

> A.  The regulation further provides:
>
> "A recipient, in providing any aid, benefit, or service, may not, ... on the basis of handicap: (ii) Afford a qualified handicapped person an opportunity to participate in or benefit from the aid, benefit or service that is not equal to that afforded others ..."
>
> 45 C.F.R. § 84.4(b)(1) (ii).
>
> B.  Elsewhere, the Section 504 regulation states:
>
> "In providing health, welfare or other social services or benefits, a recipient may not on the basis of handicap: … (2) Afford a qualified handicapped person an opportunity to receive benefits or services that is not equal to that offered non-handicapped persons.
>
> 45  C.F.R. § 84.52(a)(2).

C.  In addition, "[a] recipient hospital that provides health services or benefits shall establish a procedure for effective communication with persons with impaired hearing for the purpose of providing emergency health care." 45 C.F.R. § 84.52(c).

D.  The regulation further provides:

"A recipient to which the subject applies that employs 15 or more persons shall provide appropriate auxiliary aids to persons with impaired sensory, manual, or speaking skills, where necessary to afford such persons an equal opportunity to benefit from the service in question."

45 C.F.R. § 84.52(d)(l).

E.  The regulation provides that such "auxiliary aids may include interpreters… and other aids for persons with impaired hearing… 45 C.F.R. § 84.52(d)(3).

F.  The Section 504 regulation defines a person who has a disability as any person who:

"(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment."

45 C.F.R. § 84.3(j)(l)(i)-(iii).

G.  A qualified person with a disability, with respect to the provision of health, welfare and social services, is a person "who meets the essential eligibility requirements for the receipt of such services." 45 C.F.R. § 84.3(k)(4).

22. Through the acts and omissions alleged herein, Memorial has, solely on the basis of Plaintiff's disability, excluded Plaintiff from participating in its services, denied Plaintiff the benefit of its services, denied Plaintiff the opportunity to participate in her healthcare, and subjected Plaintiff to discrimination in violation of 29 U.S.C. § 794. *et seq*., and the regulations promulgated thereunder, and have resulted in injury to Plaintiff.

23. At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continued to violate the Rehabilitation Act and its implementing regulations by one or more or all of the following manners as defendant has discriminated against Holly by:

    A. Denying her the opportunity for the full and equal enjoyment of the services, privileges, advantages, or accommodations of the facilities owned, operated and/or contracted for use by Defendant.

    B. Denying her the opportunity to participate in or benefit from the services, facilities, privileges, advantages, or accommodations of Defendant's facilities.

    C. Offering or affording her services that are not equal to those services afforded to other individuals without hearing impairments.

    D. Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford its services to Plaintiff where such modifications would not fundamentally alter the nature of its services.

    E. Failing to establish a procedure for effective communication with Plaintiff for the purpose of providing health care.

    F. Acting intentionally and with deliberate indifference in failing to provide Plaintiff appropriate auxiliary aids and services, such as an on-site sign language interpreter or effective video remote interpreting services, where the taking of such steps would not fundamentally alter the nature of its offered services or would not result in undue burden.

    G. Defendant has otherwise discriminated against the Plaintiff.

24. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

25. As a proximate result of Defendant's violations of Section 504, Memorial has inflicted injury and damages upon the Plaintiff, including loss of a civil right, mental anguish, humiliation, and mental pain and suffering.

26. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794(a), as Defendant's conduct has inflicted injury and damages upon Plaintiff, including loss of a civil right, mental anguish, and mental pain and suffering.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Holly Williams prays for the following relief:

A. An award of compensatory monetary damages;

B. An award of attorneys' fees and costs; and

C. Such other relief as the Court deems just.

## COUNT II

## Holly Williams - Violation of Section 1557 of the Patient Protection and Affordable Care Act, 42 U.S.C. § 18116

1-19. Plaintiff incorporates by reference paragraphs 1-19.

20. Since March 2010, there was in full force and effect a statute known as the Patient Protection and Affordable Care Act (the "Affordable Care Act"), 42 U.S.C. § 18001, *et seq.*, Pub.L. 111-148. Section 1557 of the Affordable Care Act prohibits discrimination on the basis of race, color, national origin, sex, age, or disability in certain health programs and activities. 42 U.S.C. § 18116. Section 1557's implementing regulations, 45 C.F.R. §§ 92.1 – 92.203, effective as of July 18, 2016, apply to health programs or activities administered by recipients of Federal financial assistance from the Department of Health and Human Services.

21. As Defendant participates in Medicare and Medicaid, it is a covered entity subject to compliance with Section 1557.

22. The implementing regulations of Section 1557 prohibit discrimination of an individual on the basis of disability, *inter alia*, and prohibit an individual from being excluded from participation in, denied the benefits of, or otherwise be subjected to discrimination under any health program or activity. *See* 45 C.F.R. § 92.101(a)(1). Those regulations, in pertinent part, require covered entities to:

    A. Take appropriate initial and continuing steps to notify beneficiaries, enrollees, applicants and members of the public:

        (1) that the covered entity does not discriminate on the basis of race, color, national origin, sex, age, or disability in its healthcare programs or activities. 45 C.F.R. §92.8 (a)(1);

        (2) that the covered entity provides appropriate auxiliary aids and services, including qualified interpreters for individuals with disabilities and information in alternate formats, free of charge and in a timely manner, when such aids and services are necessary to ensure an equal opportunity to participate to individuals with disabilities. 45 C.F.R. §92.8 (a)(2);

        (3) how to obtain aids and services. 45 C.F.R. §92.8 (a)(4);

        (4) the identification of, and contact information for, the responsible employee designated to be responsible for adoption of grievance procedures. 45 C.F.R. §92.8 (a)(5);

        (5) the availability of grievance procedures and how to file a grievance pursuant to §92.7(b). 45 C.F.R. §92.8 (a)(6); and

        (6) how to file a discrimination complaint with the Department of Health and Human Services Office of Civil Rights. 45 C.F.R. §92.8 (a)(7).

    B. That a covered entity shall take appropriate steps to ensure that communications with individuals with disabilities are as effective as communications with others in health programs and activities, in accordance with the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

28 C.F.R. §§ 35.160 through 35.164 are the communication access standards required of public entities under Title II of the ADA. Where those regulatory provisions use the term "public entity," the term "covered entity" shall apply in its place. *See* 45 C.F.R. § 92.202(a). As applied to Section 1557 covered entities, the Title II regulations require them to "take appropriate steps to ensure that communications with applicants, participants, members of the public, and companions with disabilities are as effective as communications with others." 28 C.F.R. § 35.160(a)(1). In addition, a covered entity "shall furnish appropriate auxiliary aids and services where necessary to afford qualified individuals with disabilities, … companions, … an equal opportunity to participate in, and enjoy the benefits of, a service, program or activity of a [covered] entity," 28 C.F.R. § 35.160(b)(1); and "[i]n determining what types of auxiliary aids and services are necessary, a [covered] entity shall give *primary consideration* to the requests of individuals with disabilities …**.**" 28 C.F.R. § 35.160(b)(2) (emphasis added).

23. Defendant had a duty under Section 1557 to give primary consideration to Plaintiff's communication preference and provide them with an ASL interpreter, either on-site or via effective VRI.

24. Defendant's acts and omissions violated Section 1557 and its implementing regulations as Defendant did not take appropriate steps to ensure that communications with Plaintiff were as effective as communications with others in its healthcare services, and Defendant failed to meet its obligations under Section 1557 and the standards found at 28 C.F.R. §§ 35.160 through 35.164. 45 C.F.R. § 92.202(a).

25. Section 1557's implementing regulations provide that the enforcement mechanisms available for and provided under Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act, *inter alia*, shall be available for purposes of Section 1557 as implemented by

this part, and "compensatory damages for violations of Section 1557 are available in appropriate administrative and judicial actions brought under this rule." *See* 45 C.F.R. § 92.301.

26. Defendant's conduct constituted violations of Section 1557.

27. Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d) *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

28. Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Holly Williams prays for the following relief:

    A. An award of compensatory monetary damages;

    B. An award of attorneys' fees and costs; and

    C. Such other relief as the Court deems just.

**COUNT III**

**Kimberly Tallman - Violation of the Rehabilitation Act, 29 U.S.C. § 704**

1 - 19. Plaintiff incorporates by reference paragraphs 1 to 19.

20. Plaintiff's claims in Count III arise under the Rehabilitation Act, 29 U.S.C. § 701 *et sequitur*, Public Law 93-112, 87 Stat. 355, as amended, and its implementing regulations, 45 C.F.R. § 84.4(a), which provide in pertinent part that "[A]ny person aggrieved by any act or failure to act by any recipient of Federal assistance" under the Rehabilitation Act may bring suit. 29 U.S.C. § 794a(a)(2). This includes the non-disabled. In fact, "the use of such broad language in the

enforcement provisions of the Rehabilitation Act evinces a congressional intention to define standing to bring a private action under the Rehabilitation Act . . . as broadly as is permitted by Article III of the Constitution." *Innovative Health Sys., Inc. v. City of White Plains,* 117 F.3d 37, 47 (internal quotation marks omitted). The standing provision of the Rehabilitation Act, § 794a(a)(2), is distinct from the provision prohibiting discriminatory conduct on the part of the recipient of federal assistance, § 794(a). Therefore, the type of injury a "person aggrieved" suffers need not be "exclu[sion] from the participation in, ... deni[al of] the benefits of, or ... subject[ion] to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

21. Memorial receives federal financial assistance in the form of reimbursement from the Medicare and Medicaid programs and is therefore subject to the antidiscrimination provisions of the Rehabilitation Act, as herein described.

22. Plaintiff remained with Holly at her bedside during long portions of Holly's admission to Memorial from June 28, 2018 through June 29, 2018, and during many vital encounters with Holly's doctors and nurses.

23. Plaintiff remained with Holly during long portions of her hospitalization at Memorial to attempt to assist Holly in communication with Memorial's doctors and nurses. Plaintiff feared leaving Holly's presence, because there were no means provided to Holly by defendant to communicate effectively with Memorial staff.

24. As Holly's mother, Plaintiff was under significant stress as her daughter required immediate surgery, which was exacerbated by bearing responsibility for attempting to interpret for Holly knowing she could not interpret with any meaningful degree of accuracy, was asked to

14

interpret medical terms beyond her comprehension, and not being able to answer all of Holly's questions.

25.    At all relevant times herein, Memorial knew that Plaintiff had federally protected rights to effective communication, and Defendant's acts and omissions alleged herein violated and continue to violate the Rehabilitation Act and its implementing regulations in one or more or all of the following manners as defendant has discriminated against Plaintiff by:

    A.    Denying her the opportunity for the full and equal enjoyment of Memorial's goods, services, facilities, privileges, advantages, or accommodations.

    B.    Denying her the opportunity to participate in or benefit from Memorial's goods, services, facilities, privileges, advantages, or accommodations.

    C.    Offering or affording her services that are not equal to those services afforded to other individuals who are companions to patients who are not deaf.

    D.    Failing to make reasonable modifications in policies, practices, or procedures, which are necessary to afford Memorial's goods, services and facilities to Plaintiff where such modifications would not fundamentally alter the nature of its goods, services or facilities.

    E.    Intentionally requiring Plaintiff to interpret for Holly, when Defendant knew that Plaintiff was a family member and not a licensed interpreter, and Holly did not request that Defendant use Plaintiff.

    F.    Otherwise having discriminated against Plaintiff because of her relationship with a person with a disability.

26.    As a direct and proximate result of the foregoing, Plaintiff suffered the loss of a civil right and suffered great mental anguish, and she was otherwise injured and damaged.

27.    Section 505(a)(2) of the Rehabilitation Act, 29 U.S.C. § 794(a)(2), states that the "remedies, procedures and that the rights set forth in title VI of the Civil Rights Act of 1964 [being 42 U.S.C. § 2000(d), *et sequitur*] shall be available" for violations of section 504 of the Rehabilitation Act. By law, such remedies include compensatory monetary damages. *Barnes v. Gorman*, 536 U.S. 181 (2002).

28.     Plaintiff is entitled to reasonable attorneys' fees and costs, pursuant to section 505(b) of the Rehabilitation Act, 29 U.S.C. § 794a.

WHEREFORE, Plaintiff Kimberly Tallman prays for the following relief against defendant Memorial Medical Center:

WHEREFORE, Plaintiff prays for the following relief:

    A.    An award of compensatory monetary damages;

    B.    An award of attorneys' fees and costs; and

    C.    Such other relief as the Court deems just.

**TRIAL BY JURY.**

Dated: June 28, 2019        Holly Williams and Kimberly Tallman, Plaintiffs.

/s/ Jennifer M. Sender
_____
One of Their Attorneys

Jennifer M. Sender (ARDC No. 6207774)
Andrés J. Gallegos (ARDC No. 6212168)
Attorneys for Plaintiffs
ROBBINS, SALOMON & PATT, LTD.
180 N. LaSalle Street, Suite 3300
Chicago, Illinois 60601
(312) 782-9000 - Telephone
(312) 782-6690 - Facsimile
jsender@rsplaw.com
agallegos@rsplaw.com
#3105608